**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **QUANTUM IMAGING LLC,** | |
| Plaintiff, | |
| | Civil Action No. 6:22-cv-573 |
| v. | |
| **SONY GROUP CORPORATION; SONY CORPORATION OF AMERICA; SONY INTERACTIVE ENTERTAINMENT INC.; SONY INTERACTIVE ENTERTAINMENT LLC; AND BLUEPOINT GAMES, INC.** | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT
AND DEMAND FOR JURY TRIAL**

Plaintiff Quantum Imaging LLC files this Complaint for Patent Infringement and Damages against Defendants Sony Group Corporation, Sony Corporation of America, Sony Interactive Entertainment Inc., Sony Interactive Entertainment LLC, and Bluepoint Games, Inc. and would respectfully show the Court as follows:

**PARTIES**

1.      Plaintiff Quantum Imaging LLC ("Quantum" or "Plaintiff") is a Wyoming Limited Liability Company. Quantum is the assignee of the four patents-in-suit (see ¶ 66), which relate to, among other things and without limitation, inventions related to devices and programs that offer functionality providing users the ability to engage in business-related transactions and other functionalities while playing games and other functionalities.

2.      Defendant Sony Group Corporation is a corporation organized and existing under the laws of Japan with its principal executive offices at 1-7-1 Konan Minato-ku, Tokyo, 108-0075

1

Japan.  Defendant Sony Group Corporation engages in business in the State of Texas but, upon information and belief, does not maintain a regular place of business in the State or a designated agent for service of process.  Therefore, pursuant to § 17.044 of the Tex. Civ. Prac. & Rem. Code, Defendant Sony Group Corporation has designated the Secretary of State as its agent for service of process and may be served with process through its counsel or by serving the Secretary of State.  The Secretary of State may forward service to Defendant Sony Group Corporation at its home office address located at 1-7-1 Konan Minato-ku, Tokyo, 108-0075 Japan.

3.      Defendant Sony Corporation of America is a corporation organized and existing under the laws of the State of New York with its principal executive offices at 25 Madison Avenue, New York, NY 10010. On information and belief, Defendant Sony Corporation of America is the U.S. headquarters of Defendant Sony Group Corporation. Defendant Sony Corporation of America may be served through its registered agent, Corporation Service Company at 80 State Street, Albany, NY 12207.

4.      Defendant Sony Interactive Entertainment Inc. is a corporation organized and existing under the laws of Japan with its principal place of business at 1-7-1 Konan Minato-ku, Tokyo, 108-0075 Japan. Defendant Sony Interactive Entertainment Inc. is also a corporation organized and existing under the laws of the State of Delaware. Defendant Sony Interactive Entertainment Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808. On information and belief, Defendant Sony Interactive Entertainment Inc. is a subsidiary of Defendant Sony Group Corporation.

5.      Defendant Sony Interactive Entertainment LLC is a limited liability company organized and existing under the laws of the State of California. Defendant Sony Interactive Entertainment LLC is registered to do business in Texas and may be served at 211 E 7th Street,

Suite 620, Austin Texas, 78701. On information and belief, Sony Interactive Entertainment LLC is a subsidiary of Defendant Sony Group Corporation.

6.      Defendant Bluepoint Games, Inc. ("Bluepoint") is a corporation organized under the laws of the State of Texas with principal place of business at 5000 Plaza on the Lake, Austin, TX 78746, and may be served via its registered agent, Corporation Service Company D/B/A CSC-Lawyers Inc. at 211 E 7th Street, Suite 620, Austin Texas, 78701. On information and belief, Bluepoint Games Inc. is part of PlayStation Studios (formerly SCE Worldwide Studios and SIE Worldwide Studios), which is a division of Defendant Sony Interactive Entertainment LLC and/or Defendant Sony Interactive Entertainment Inc.

7.      On information and belief, Sony Group Corporation, Sony Corporation of America, Sony Interactive Entertainment Inc., Sony Interactive Entertainment LLC, and Bluepoint Games Inc. (collectively referred to as "Sony" or "Defendants") directly and/or indirectly develop, design, manufacture, distribute, market, offer to sell and/or sell infringing products and services in the United States, including in the Western District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this complaint.

## JURISDICTION

8.      This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

9.      This United States District Court for the Western District of Texas has general and specific personal jurisdiction over Defendants because, directly or through intermediaries,

Defendants have committed acts within the District giving rise to this action and are present in and transact and conduct business in and with residents of this District and the State of Texas.

10.     Quantum's causes of action arise, at least in part, from Defendants' contacts with and activities in this District and the State of Texas.

11.     Defendants have committed acts of infringing the patents-in-suit within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products claimed by the patents-in-suit, including without limitation products made by practicing the claimed methods of the patents-in-suit. Defendants, directly and through intermediaries, make, use, sell, offer for sale, import, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

12.     This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq.*

13.     Personal jurisdiction exists over Defendants because Defendants have minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this District.

14.     This Court also has personal jurisdiction over Defendants, in part, because Defendants do continuous and systematic business in this District, including by providing infringing products and services to the residents of the Western District of Texas that Defendants

knew would be used within this District, and by soliciting business from the residents of the Western District of Texas.

15.     Defendants are further subject to personal jurisdiction in this Court because, *inter alia*, Defendants through agents regularly solicit and transact business in the Western District of Texas, and have an established place of business in the Western District of Texas.  Accordingly, this Court's jurisdiction over the Defendants comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendants' purposeful minimum contacts with the State of Texas.

16.     This Court also has personal jurisdiction over Defendants, because Defendants have made its products available within this District.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391, and 1400(b).

18.     For example, Bluepoint maintains its principal place of business at 5000 Plaza on the Lake, Austin, Texas 78746.

19.     Defendants have posted over 100 opportunities for employment in this District from January 1, 2022, until the date of this Complaint.

20.     As of the date of this Complaint, via the PlayStation.com website, Defendants are seeking to immediately hire at least 12 positions in Austin:[1]

---

[1] https://www.playstation.com/en-us/corporate/playstation-careers/



21. Similarly, as of the date of this Complaint, "PlayStation" is hiring for at least 18 on-site positions in Austin.[2]

22. For Bluepoint, as of the date of this Complaint, LinkedIn lists 68 current Bluepoint employees in Austin,[3] including, for example, 12-year Bluepoint employee Mr. Steven Schaefer, whose latest project is stated to be Demon's Souls for the PlayStation 5 (one of the Accused Products in this Complaint):[4]



---

[2] https://www.linkedin.com/jobs/search/?f_C=1254%2C10516637%2C57993393%2C25821%2C32068831&geoId=90000064&location=Austin%2C%20Texas%20Metropolitan%20Area&sortBy=R
[3] https://www.linkedin.com/company/bluepoint-games/
[4] https://www.linkedin.com/in/steven-schaefer-42b97067/

6

as well as 6.5- year Bluepoint employee Mr. Chris Torres, who is the Animation Director for the Accused Product, Demon's Souls:[5]



23.    Importantly, of the **68 Bluepoint employees** listed as located in Austin via LinkedIn,[6] **only five** are listed as being located outside of the Austin metropolitan area and presumably working remotely with the Austin Bluepoint office.  These individuals include the following: (1) Mr. Kyle Shubel, a Senior Product Manager who has been at Bluepoint since April 2022 listed as being remote in Springfield, Missouri;[7] (2) Mr. Alex Gold, a one-year Senior Game Designer at Bluepoint who is listed as working in Austin but located in the San Francisco Bay Area;[8] (3) Mr. Sven Bybee, who apparently has done work for Bluepoint on a freelance basis from Decatur, Georgia as an Freelance Concept Artist for the last 4.5 years;[9] (4) Ms. Briana Gibson, of Sarasota Florida, who has worked as a Junior Environment Artist for Bluepoint for three years;[10] and (5) Mr. Jose Parodi, a Character Concept Artist who has worked remotely from Medellín, Colombia since April 2018.[11] All other Bluepoint employees are listed as being based and residing in the Austin area, including the President, Head of Technology, Director of Business and Legal Affairs, and all other Bluepoint personnel in top roles as well as the game designers.

---

[5] https://www.linkedin.com/in/chris-torres-8886184/
[6] https://www.linkedin.com/search/results/people/?currentCompany=%5B%228919250%22%5D&keywords=bluepoint%20games&origin=FACETED_SEARCH&position=0&searchId=f6ee24f9-d5f4-4129-93fd-cb6c94c118ce&sid=0YY
[7] https://www.linkedin.com/in/kyleshubel/
[8] https://www.linkedin.com/in/alexgoldgames/
[9] https://www.linkedin.com/in/svenbybee/
[10] https://www.linkedin.com/in/brianna-gibson-636895127/
[11] https://www.linkedin.com/in/jose-parodi-6a458163/

24.     On information and belief, Defendants employ individuals, and offer employment opportunities to individuals, in this District, including but not limited to Principal Hardware Architects; Service Reliability Engineers; Manager, Hardware & System Engineers; and Platform Engineers; among others.

25.     On information and belief, several key witnesses are located in this District, including Sony personnel as well as non-party witnesses (including former Sony employees).

26.     For example, on information and belief, Bruno Matzdorf, a Senior Manager of Tools and Middleware, works in this District.

27.     On information and belief, Colin DuPre, a Vice President of Technical Operations, works in this District.

28.     On information and belief, Jeffrey Larkin, a Senior VFX Artist, works in this District.

29.     On information and belief, Fabio Lissi, a Senior Engineering Manager, works in this District.

30.     On information and belief, Richard Britain, a Manager of Project Management – Technical Operations, works in this District.

31.     On information and belief, Nicholas Hancock, an Engineer, works in this District.

32.     On information and belief, John Burns, a Senior Software Engineer, works in this District.

33.     On information and belief, Greg Herzbrun, a Manager of Release Engineering, works in this District.

34.     On information and belief, Michael Mengden, a Senior Software Engineer, works in this District.

35.     On information and belief, Rebecca Markovsky, a Software Engineer, works in this District.

36.     On information and belief, Jeff Schanz, a Remote Animator, works in this District.

37.     On information and belief, the above-named individuals work, at least in part, on and/or with the Accused Products (as defined at ¶ 66 herein).

38.     On information and belief, there are many more key witnesses who work on and/or with the Accused Products in this District.

39.     On information and belief, millions of lines of relevant code in the Accused Products are maintained in this District, and many of Defendants' employees who have edited such code are currently located in this District.

40.     On information and belief, relevant hardware used in the Accused Products is maintained in this District, and many of Defendants' employees who have performed work related to such hardware did so in this District and/or are currently located in this District.

41.     On information and belief, there are key witnesses in this District who work in other divisions and/or subsidiaries of Defendants, including those who perform legal, finance, marketing, and account management functions related to the Accused Products.

42.     On information and belief, all individuals described above, whether named or unnamed, work, at least in part, on and/or with the Accused Products.

43.     On information and belief, the majority of relevant documents are accessible by Defendants through its offices in this District.

44.     On information and belief, Defendants maintain a data center in this District.

45.     Defendants have authorized sellers and sales representatives that offer and sell the Accused Products through the State of Texas, including in this District and to consumers in this District, such as Best Buy and GameStop.

46.     Since Judge Albright was sworn in as a Federal District Court judge on September 6, 2018, the median time to trial in patent cases in the Waco Division of the Western District of Texas has been 656 days (1.8 years), which is significantly faster than alternative venues.

47.     Sony Group Corporation, doing business under the name Sony Corporation, has consented to venue for patent-related suits in this District before. *See Solas OLED Ltd. v. LG Display Co. LTD., et al.*, 19-cv-00236, Doc. No. 138, ¶ 9.

## THE PATENTS-IN-SUIT

48.     On June 4, 2013, United States Patent No. 8,458,028 ("the '028 patent"), entitled "SYSTEM AND METHOD FOR INTEGRATING BUSINESS-RELATED CONTENT INTO AN ELECTRONIC GAME" was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Frances Barbaro Altieri. A true and correct copy of the '028 patent is attached hereto as **Exhibit A**.

49.     The '028 patent claims patent-eligible subject matter and is valid and enforceable.

50.     Quantum is the exclusive owner by assignment of all rights, title, and interest in the '028 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '028 Patent.

51.     Defendants are not licensed to practice any claim of the '028 Patent, either expressly or implicitly, nor do they lawfully enjoy or benefit from any rights in or to the '028 patent whatsoever.

52.     On April 9, 2019, United States Patent No. 10,255,724 ("the '724 patent"), entitled "INTERACTIVE VIRTUAL THEMATIC ENVIRONMENT" was duly and legally issued by the USPTO to Frances Barbaro Altieri. A true and correct copy of the '724 patent is attached hereto as **Exhibit B**.

53.     The '724 patent claims patent-eligible subject matter and is valid and enforceable.

54.     Quantum is the exclusive owner by assignment of all rights, title, and interest in the '724 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '724 Patent.

55.     Defendants are not licensed to practice any of the claim of the '724 patent, either expressly or implicitly, nor do they lawfully enjoy or benefit from any rights in or to the '724 patent whatsoever.

56.     On November 24, 2020, United States Patent No. 10,846,941 ("the '941 patent"), entitled "INTERACTIVE VIRTUAL THEMATIC ENVIRONMENT" was duly and legally issued by the USPTO to Frances Barbaro Altieri.     A true and correct copy of the '941 patent is attached hereto as **Exhibit C**.

57.     The '941 patent claims patent-eligible subject matter and is valid and enforceable.

58.     Quantum is the exclusive owner by assignment of all rights, title, and interest in the '941 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '941 Patent.

59.     Defendants are not licensed to practice any claim of the '941 patent, either expressly or implicitly, nor do they lawfully enjoy or benefit from any rights in or to the '941 patent whatsoever.

60.     On April 27, 2021, United States Patent No. 10,991,165 ("the '165 patent"), entitled "INTERACTIVE THEMATIC ENVIRONMENT" was duly and legally issued by the USPTO to Frances Barbaro Altieri.  A true and correct copy of the '165 patent is attached hereto as **Exhibit D**.

61.     The '165 patent claims patent-eligible subject matter and is valid and enforceable.

62.     Quantum is the exclusive owner by assignment of all rights, title, and interest in the '165 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '165 Patent.

63.     Defendants are not licensed to practice any claim of the '165 patent, either expressly or implicitly, nor do they lawfully enjoy or benefit from any rights in or to the '165 patent whatsoever.

64.     The '028, '724, '941, and '165 patents are collectively referred to herein as the "Quantum Patents" or the "patents-in-suit."

65.     Plaintiff has fulfilled its obligations, if any, under 35 U.S.C. § 287.

## ACCUSED INSTRUMENTALITIES

66.     Hereafter, the terms "Accused Instrumentalities" or "Accused Products" refer to all products manufactured, used, tested, imported, sold, or offered for sale by or on behalf of Defendants practicing the patents-in-suit and all processes employed by Defendants that practice

the patents-in-suit, consisting of at least Defendants' products that include and/or support its PlayStation line of products.

67.     On information and belief, and as an example, such Accused Products include at least the following: PlayStation Network, PlayStation VITA, PlayStation 4 (all versions, including without limitation, PS4 Pro), PlayStation VR, and PlayStation 5 (all versions). The Accused Products further include game software that is distributed and sold by Defendants, including without limitation Bluepoint's Demon's Souls.

68.     The Accused Products include, among other things and without limitation, functionality providing users the ability to engage in business-related transactions and other functionalities while playing games.

69.     Defendants manufacture, use, test, market, offer for sale, sell and/or import into the United States the Accused Products.

70.     On or around February 28, 2005, Defendants were made aware of the patent family for at least part of the patents-in-suit and nevertheless willfully infringed the patents-in-suit.

## COUNT I
## PATENT INFRINGEMENT OF THE '028 PATENT

71.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

72.     Defendants have, pursuant to 35 U.S.C. §271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '028 patent, by making, using, testing, selling, offering for sale and/or importing into the United States the Accused Products.

73.     Defendants also indirectly infringe the '028 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b).

74.     Defendants have knowingly (since at least the date of this Complaint), intentionally, and actively aided, abetted and induced others to directly infringe at least one claim of the '028 patent (such as its customers in this District and throughout the United States).

75.     Defendants continue to induce infringement of the '028 patent.

76.     Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '028 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use.

77.     Defendants contribute to their customers' infringement because, with knowledge of the '028 patent, Defendants supply the technology that allows their customers to infringe the '028 patent.

78.     Defendants have knowledge that their activities concerning the Accused Products infringe one or more claims of the '028 patent.

79.     On information and belief, Defendants will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '028 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '028 patent.

80.     Further, Defendants provide information and technical support to their customers, including promotional materials, product manuals, brochures, videos, demonstrations, and website materials encouraging their customers to purchase and instructing them to use the Accused Products (which are acts of direct infringement of the '028 patent).

81.     Alternatively, Defendants know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '028 patent but took deliberate actions to avoid learning of these facts.

82.     On information and belief, Defendants' infringement of the '028 patent has been willful and merits increased damages.

83.     On information and belief, Defendants have known that their activities concerning the Accused Products infringed one or more claims of the '028 patent since at least the date of this Complaint.

84.     On information and belief, Defendants have made no attempt to design around the claims of the '028 patent.

85.     On information and belief, Defendants did not have a reasonable basis for believing that the claims of the '028 patent were invalid.

86.     On information and belief, the Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

87.     Quantum has been damaged as the result of Defendants' willful infringement. Upon information and belief, Defendants will continue to infringe one or more claims of the '028 patent unless and until they are enjoined by this Court.

88.     Defendants have caused and will continue to cause Quantum irreparable injury and damage by infringing one or more claims of the '028 patent. Quantum will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the claims of the '028 patent.

89.     The claim chart attached hereto as **Exhibit E** describes how the elements of exemplary claim 7 from the '028 patent are infringed by the Accused Products. This provides

details regarding only one example of one basis of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves its right to amend and fully provide its infringement arguments and evidence thereof until its Preliminary and Final Infringement Contentions are later produced according to the Court's scheduling order in this case

### COUNT II
### PATENT INFRINGEMENT OF THE '724 PATENT

90.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

91.     Defendants have, pursuant to 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '724 patent, by making, using, testing, selling, offering for sale and/or importing into the United States the Accused Products.

92.     Defendants also indirectly infringe the '724 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b).

93.     Defendants have knowingly (since at least the date of this Complaint), intentionally, and actively aided, abetted and induced others to directly infringe at least one claim of the '724 patent (such as its customers in this District and throughout the United States).

94.     Defendants continue to induce infringement of the '724 patent.

95.     Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '724 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce    and is incapable of substantial noninfringing use.

96.     Defendants contribute to their customers' infringement because, with knowledge of the '724 patent, Defendants supply the technology that allows their customers to infringe the '724 patent.

16

97.     Defendants have knowledge that their activities concerning the Accused Products infringe one or more claims of the '724 patent.

98.     On information and belief, Defendants will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '724 patent), and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '724 patent.

99.     Further, Defendants provide information and technical support to their customers, including promotional materials, product manuals, brochures, videos, demonstrations, and website materials encouraging its customers to purchase and instructing them to use Defendants' Accused Products (which are acts of direct infringement of the '724 patent).

100.    Alternatively, Defendants know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '724 patent but took deliberate actions to avoid learning of these facts.

101.    On information and belief, Defendants' infringement of the '724 patent has been willful and merits increased damages.

102.    On information and belief, Defendants have known that their activities concerning the Accused Products infringed one or more claims of the '724 patent since at least the date of this Complaint.

103.    On information and belief, Defendants have made no attempt to design around the claims of the '724 patent.

104.    On information and belief, Defendants did not have a reasonable basis for believing that the claims of the '724 patent were invalid.

105.    On information and belief, the Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

106.    Quantum has been damaged as the result of Defendants' willful infringement. Upon information and belief, Defendants will continue to infringe one or more claims of the '724 patent unless and until they are enjoined by this Court.

107.    Defendants have caused and will continue to cause Quantum irreparable injury and damage by infringing one or more claims of the '724 patent. Quantum will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the claims of the '724 patent.

108.    The claim chart attached hereto as **Exhibit F** describes how the elements of exemplary claim 1 from the '724 patent are infringed by the Accused Products. This provides details regarding only one example of one basis of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves its right to amend and fully provide its infringement arguments and evidence thereof until its Preliminary and Final Infringement Contentions are later produced according to the Court's scheduling order in this case.

## COUNT III
## PATENT INFRINGEMENT OF THE '941 PATENT

109.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

110.    Defendants have, pursuant to 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '941 patent, by making, using, testing, selling, offering for sale and/or importing into the United States the Accused Products.

111.    Defendants also indirectly infringe the '941 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b).

18

112.    Defendants have knowingly (since at least the date of this Complaint), intentionally, and actively aided, abetted and induced others to directly infringe at least one claim of the '941 patent (such as its customers in this District and throughout the United States).

113.    Defendants continue to induce infringement of the '941 patent.

114.    Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '941 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use.

115.     Defendants contribute to their customers' infringement because, with knowledge of the '941 patent, Defendants supply the technology that allows their customers to infringe the '941 patent.

116.    Defendants have knowledge that their activities concerning the Accused Products infringe one or more claims of the '941 patent.

117.    On information and belief, Defendants will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '941 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '941 patent.

118.    Further, Defendants provide information and technical support to their customers, including promotional materials, product manuals, brochures, videos, demonstrations, and website materials encouraging their customers to purchase and instructing them to use the Accused Products (which are acts of direct infringement of the '941 patent).

119.    Alternatively, Defendants know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '941 patent but took deliberate actions to avoid learning of these facts.

120.    On information and belief, Defendants' infringement of the '941 patent has been willful and merits increased damages.

121.    On information and belief, Defendants have known that their activities concerning the Accused Products infringed one or more claims of the '941 patent since at least the date of this Complaint.

122.    On information and belief, Defendants have made no attempt to design around the claims of the '941 patent.

123.    On information and belief, Defendants did not have a reasonable basis for believing that the claims of the '941 patent were invalid.

124.    On information and belief, the Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

125.    Quantum has been damaged as the result of Defendants' willful infringement. Upon information and belief, Defendants will continue to infringe one or more claims of the '941 patent unless and until they are enjoined by this Court.

126.    Defendants have caused and will continue to cause Quantum irreparable injury and damage by infringing one or more claims of the '941 patent. Quantum will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the claims of the '941 patent.

127.    The claim chart attached hereto as **Exhibit G** describes how the elements of exemplary claim 1 from the '941 patent are infringed by the Accused Products. This provides

details regarding only one example of one basis of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves its right to amend and fully provide its infringement arguments and evidence thereof until its Preliminary and Final Infringement Contentions are later produced according to the Court's scheduling order in this case.

## COUNT IV
## PATENT INFRINGEMENT OF THE '165 PATENT

128.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

129.    Defendants have, pursuant to 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '165 patent, by making, using, testing, selling, offering for sale and/or importing into the United States the Accused Products.

130.    Defendants also indirectly infringe the '165 patent by actively inducing the direct infringement by third parties under 35 U.S.C. § 271(b).

131.    Defendants have knowingly (since at least the date of this Complaint), intentionally, and actively aided, abetted and induced others to directly infringe at least one claim of the '165 patent (such as its customers in this District and throughout the United States).

132.    Defendants continue to induce infringement of the '165 patent.

133.    Defendants have contributorily infringed and are contributory infringers because, with knowledge of the '165 patent (since at least the date of this Complaint), they supply a material part of a claimed combination, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use.

134.    Defendants contribute to their customers' infringement because, with knowledge of the '165 patent, Defendants supply the technology that allows their customers to infringe the '165 patent.

135.     Defendants have knowledge that their activities concerning the Accused Products infringe one or more claims of the '165 patent.

136.     On information and belief, Defendants will continue to encourage, aid, or otherwise cause third parties to import, sell, offer for sale, and use the Accused Products (which are acts of direct infringement of the '165 patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '165 patent.

137.     Further, Defendants provide information and technical support to their customers, including product manuals, brochures, videos, demonstrations, and website materials encouraging their customers to purchase and instructing them to use the Accused Products (which are acts of direct infringement of the '165 patent).

138.     Alternatively, Defendants know and/or will know that there is a high probability that the importation, sale, offer for sale, and use of the Accused Products constitutes direct infringement of the '165 patent but took deliberate actions to avoid learning of these facts.

139.     On information and belief, Defendants' infringement of the '165 patent has been willful and merits increased damages.

140.     On information and belief, Defendants have known that their activities concerning the Accused Products infringed one or more claims of the '165 patent since at least the date of this Complaint.

141.     On information and belief, Defendants have made no attempt to design around the claims of the '165 patent.

142.     On information and belief, Defendants did not have a reasonable basis for believing that the claims of the '165 patent were invalid.

143.    On information and belief, the Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

144.    Quantum has been damaged as the result of Defendants' willful infringement. Upon information and belief, Defendants will continue to infringe one or more claims of the '165 patent unless and until they are enjoined by this Court.

145.    Defendants have caused and will continue to cause Quantum irreparable injury and damage by infringing one or more claims of the '165 patent. Quantum will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until Defendants are enjoined from infringing the claims of the '165 patent.

146.    The claim chart attached hereto as **Exhibit H** describes how the elements of exemplary claim 1 from the '165 patent are infringed by the Accused Products. This provides details regarding only one example of one basis of Defendants' infringement, and only as to a single patent claim, and Plaintiff reserves its right to amend and fully provide its infringement arguments and evidence thereof until its Preliminary and Final Infringement Contentions are later produced according to the Court's scheduling order in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Quantum Imaging LLC respectfully requests the following relief:

A.    A judgment that Defendants have directly infringed either literally and/or under the doctrine of equivalents and continue to directly infringe the Quantum Patents set forth in this Complaint;

B.    A judgment that Defendants have induced infringement and continue to induce infringement of the Quantum Patents set forth in this Complaint;

C.      A judgment that Defendants have contributorily infringed and continue to contributorily infringe the Quantum Patents set forth in this Complaint;

D.      A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including treble damages for willful infringement as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

E.      A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and that Plaintiff is therefore entitled to reasonable attorneys' fees;

F.      A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

G.      A judgment and order awarding a compulsory ongoing royalty;

H.      A judgment and order awarding Plaintiff costs associated with bringing this action;

I.      A judgment granting a preliminary and permanent injunction that restrains and enjoins Defendants, its officers, directors, divisions, employees, agents, servants, parents, subsidiaries, successors, assigns, and all those in privity, concert or participation with them from directly or indirectly infringing the Quantum Patents; and

J.      Such further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Pursuant to FED. R. CIV. P. 38, Plaintiff Quantum Imaging LLC hereby demands a trial by jury on all issues so triable.

Dated: June 3, 2022


Respectfully submitted,

By: /s/ Erick S. Robinson
  Erick S. Robinson
  Lead Counsel
  Texas Bar No. 24039142
  Spencer Fane LLP
  3040 Post Oak Boulevard
  Suite 1300
  Houston, TX 77056
  Telephone: (713) 212-2638
  Mobile: (713) 498-6047
  Fax: (713) 963-0859
  erobinson@spencerfane.com

  Patrick M. Dunn
  Texas Bar No. 24125214
  Spencer Fane LLP
  9442 North Capital of Texas Highway
  Plaza I - Suite 500
  Austin, TX 78759
  Telephone: (512) 840-4550
  Fax: (512) 840-4551
  pdunn@spencerfane.com

  Kyle L. Elliott (*pro hac vice* to be filed)
  Missouri Bar No. 49145
  Brian T. Bear (*pro hac vice* to be filed)
  Missouri Bar No. 61957
  Spencer Fane LLP
  1000 Walnut Street, Suite 1400
  Kansas City, Missouri 64106
  Telephone: (816)474-8100
  Fax: (816)474-3216
  kelliott@spencerfane.com
  bbear@spencerfane.com

-and-

Douglas J. Sorocco, OK Bar #17347 (*pro hac vice* forthcoming)
Evan W. Talley, OK Bar # 22923 (*pro hac vice* forthcoming)
**DUNLAP CODDING PC**
609 W. Sheridan Avenue
Oklahoma City, OK  73102
Telephone:   (405) 607-8600
 Fax: (405) 607-8686
dsorocco@dunlapcodding.com
etalley@dunlapcodding.com

*Attorneys for Quantum Imaging LLC*