**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| QUANTUM IMAGING LLC,<br><br>        Plaintiff.<br><br>v.<br><br>SONY GROUP CORPORATION; SONY CORPORATION OF AMERICA; SONY INTERACTIVE ENTERTAINMENT INC.; SONY INTERACTIVE ENTERTAINMENT LLC; AND BLUEPOINT GAMES, INC.<br><br>        Defendants. | CASE NO. 6:22-cv-573-ADA-DTG<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS SONY INTERACTIVE ENTERTAINMENT INC., SONY INTERACTIVE ENTERTAINMENT LLC, AND BLUEPOINT GAMES, INC.'S OPPOSED MOTION FOR INTRA-DISTRICT TRANSFER TO THE AUSTIN DIVISION <u>OF THE WESTERN DISTRICT OF TEXAS</u>**

I.        INTRODUCTION

Defendants Sony Interactive Entertainment LLC ("SIE"), Sony Interactive Entertainment

Inc. ("SIEI"), and Bluepoint Games, Inc. ("Bluepoint") (collectively, "Defendants") respectfully

bring this motion to transfer ("Motion") this case from the Waco to the Austin Division of the

Western District of Texas. Plaintiff Quantum Imaging LLC ("Plaintiff" or "Quantum") is a non-

practicing Wyoming corporation with no connection to Texas let alone Waco. By Plaintiff's own

allegations, this case should have been brought in the Austin Division, which is clearly the more

convenient forum. Plaintiff has conceded this point through its Complaint, by failing to make any

allegation connecting this case to Waco, and pleading extensive facts related to Austin. For

example, Plaintiff alleges that Bluepoint's principal place of business is in Austin (Complaint

("Compl."), ¶¶ 6, 18), that "Defendants" and "PlayStation" were advertising several Austin-

based employment positions at the time of the filing of the Complaint (*id*. ¶¶ 20-21), that

Bluepoint employs 68 individuals in Austin (*id*. ¶¶ 22-23), and that SIE employs at least eleven

named individuals in Austin who Plaintiff believes are "key witnesses" (*id*. ¶¶ 25-38). Thus, on

the face of the Complaint, if taken as true, this case clearly has more connections to the Austin

Division than the Waco Division. And Plaintiff is right – as discussed below, Defendants have

identified no evidence or witnesses located in Waco, but substantial sources of proof are located

in Austin, including but not limited to all of Bluepoint's relevant operations, hard copy and

electronic documents, servers, witnesses and custodians. Moreover, any witnesses located

outside of the Western District of Texas – such as Northern California-based SIE employees

knowledgeable about the Accused Products[1] – would spend more time and money traveling to

---

[1] The Court should note that there is another case pending in this district against Defendants SIE
and SIEI, *Acqis LLC v. Sony Interactive Entertainment, LLC and Sony Interactive Entertainment,*

the Waco courthouse than to Austin. Finally, time to trial receives less weight here because

Quantum is a non-practicing entity. In sum, several key private and public factors weigh in favor

of transfer and none weigh against. The Court, therefore, should grant this Motion.

## II.        PROCEDURAL AND FACTUAL BACKGROUND

### A.        The Parties

Plaintiff is a Wyoming limited liability company headquartered in Casper, Wyoming.

Compl. ¶ 1; Declaration of Karineh Khachatourian ("Khachatourian Decl."), Ex. B.[2]  Plaintiff

appears to be a non-practicing entity. Plaintiff also appears to be owned by Frances Barbaro

Altieri, who also owns Barbaro Technologies, LLC ("Barbaro Technologies"). Ex. O; Ex. D, ¶ 1.

The Complaint alleges no facts suggesting Plaintiff has any connection to the Waco Division, the

Western District of Texas, or anywhere in the state of Texas.

Defendants include SIE, SIEI, and Bluepoint.[3]  Compl. ¶¶ 2-6. No Defendant has any

office or employee located in the Waco. Declaration of Lori Waugh ("Waugh Decl.") ¶¶ 4-5, 7;

Declaration of Tanya Clarkson ("Clarkson Decl."), ¶¶ 4-5. SIE is a California limited liability

company with its worldwide headquarters and principal place of business in San Mateo,

California. Compl. ¶ 5; Waugh Decl. ¶ 4. SIE operates the business of designing, developing,

marketing and distributing PlayStation® ("PS") video game products throughout the world,

including acting as the exclusive distributor of the accused PS devices in the United States.

Waugh Decl. ¶ 4. SIE has additional offices in other California locations, including San

---

*Inc.*, Case No. 6:22-cv-386. The *Acqis* case involves different patents and technology and does
not include Bluepoint as a defendant. While the *Acqis* and *Quantum* cases could have both been
brought in California, because of Bluepoint, the defendants here only seek transfer to the Austin
division.

[2] Unless otherwise indicated, references to "Ex." or "Exs." throughout this Motion refer to the
Declaration of Karineh Khachatourian filed contemporaneously herewith.

[3] Plaintiff also sued Sony Group Corporation and Sony Corporation of America, but they have
been dismissed by stipulation. Dkt. No. 35.

Francisco, Campbell, Los Angeles, Aliso Viejo, and San Diego, and has affiliated offices in London, England, and Tokyo, Japan. *Id.* ¶ 4. SIE also has an office at 7800 Shoal Creek Boulevard in Austin. *Id.* ¶ 7. The majority of SIE's employees reside in California, and 43[4] reside in the Austin area. *Id.* ¶¶ 6-7. No SIE employees reside or work in Waco. *Id.* ¶ 7.

SIEI, SIE's affiliate in Japan, is incorporated under the laws of Japan with its principal place of business at 1-7-1 Konan Minato-ku, Tokyo, 108-0075 Japan. Compl. ¶ 4; *Id.* ¶ 5. SIEI has no office in Waco, Texas. Waugh Decl. ¶ 5. The majority of SIEI's employees are located in Japan, and no SIEI employees reside or work in Waco. *Id.* ¶¶ 5, 7.

Bluepoint is incorporated in Texas, with its headquarters and principal place of business at 5000 Plaza on the Lake, Suite 350, Austin, Texas 78746. Compl. ¶ 6; Clarkson Decl. ¶ 4. No Bluepoint employees reside or work in Waco. Clarkson Decl. ¶ 5.

### B.    Allegations

Plaintiff asserts four patents (the "Asserted Patents") against Defendants:

| Patent | Title | Issue Date |
|---|---|---|
| U.S. Patent No. 8,458,028 (the "'028 patent") | System and Method for Integrating Business-related Content Into an Electronic Game | June 4, 2013 |
| U.S. Patent No. 10,255,724 (the "'724 patent") | Interactive Virtual Thematic Environment | April 9, 2019 |
| U.S. Patent No. 10,846,941 (the "'941 patent") | Interactive Virtual Thematic Environment | November 24, 2020 |
| U.S. Patent No. 10,991,165 (the "'165 patent") | Interactive Virtual Thematic Environment | April 27, 2021 |

Compl. ¶¶ 48-65. The '165 patent, through a terminal disclaimer, shares an expiration date with

---

[4] These are current SIE numbers.

U.S. Patent No. 7,373,377 (the "'377 patent").[5]  Plaintiff does not appear to have brought any

other case involving the Asserted Patents in the Western District of Texas. Ex. X. Frances

Barbaro Alteri, the inventor of the Asserted Patents, however, has brought suit through a separate

entity, Barbaro Technologies, against Niantic, Inc. on related patents (including the '377 patent)

in the Central District of California. *See* Complaint, *Niantic*, 2:18-cv-00773-CBM-E (Dkt. No.

1). The *Niantic* case was subsequently transferred to the Northern District of California on

convenience grounds where the asserted patents were held invalid. Ex. C. Ultimately, that court

ruled that the asserted claims of U.S. Patent No. 8,228,325, which is in the same patent family

and shares a common specification with the Asserted Patents, are ineligible subject matter under

35 U.S.C. § 101. *Niantic*, 2:18-cv-00773 (Dkt. No. 123 at 1:23-24). It appears that Barbaro was

seeking a purchaser for the Asserted Patents including shopping the portfolio around to Google

and other companies located in the Bay Area. Ex. D, ¶¶ 4, 9.

 The Asserted Patents all identify the same inventor – Frances Barbaro Altieri – owner of

both Quantum and Barbaro Technologies, who appears to reside in Massachusetts. Compl., Exs.

A-D, all at 2; Ex. E; Ex. D, at 4. The '941 and '165 patents were prosecuted by Dunlap Codding,

P.C. ("Dunlap Codding"), which has an office in Austin, Texas. Compl., Exs. C-D, all at 2;  Ex.

F. Dunlap Codding has made an appearance in this case. Dkt. Nos. 7-9. The '028 and '724

patents were prosecuted by Jean C. Edwards of Edwards Neils LLC, which is located in Gallatin,

Tennessee. Compl., Exs. A-B, all at 2; Ex. G.

 C. **Accused Instrumentalities**

 The Complaint alleges accused products (the "Accused Products") including the

PlayStation® Network, PlayStation® VITA, PlayStation® 4 (all versions, including without

---

[5] SIE recently filed a motion to dismiss in this case (Dkt. No. 43) in part because the '165 Patent
is not enforceable because it was not commonly assigned to the owner of the '377 Patent

limitation, PS4 Pro), PlayStation® VR, PlayStation® 5 (all versions), and Bluepoint's Demon's

Souls videogame. Compl. ¶¶ 66-67. According to the Complaint, the Asserted Patents are

allegedly infringed by a range of features, including video game purchases, video game wishlists,

in-game purchases, and real-time in-game messaging systems, within certain gaming products,

including various PlayStation® consoles and video games, as well as the PlayStation® Network

platform. *Id.* at Exs. E-H. The SIE employees who are knowledgeable about the Accused

Products are located in Northern California, while the knowledgeable Bluepoint employees are

all located in Austin.[6]  Waugh Decl. ¶ 6; Clarkson Decl. ¶ 5.

## III.    LEGAL STANDARD

A district court may transfer any action, for the convenience of parties and witnesses and

in the interest of justice, to any other district where the case "might have been brought." *See In

re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (quoting 28 U.S.C. §

1404(a)). "The § 1404(a) factors apply as much to transfer between divisions of the same district

as to transfers from one district to another." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013).

Courts should grant a section 1404(a) motion to transfer if the movant shows the "transferee

venue is clearly more convenient" by considering: (1) access to sources of proof; (2) compulsory

process availability to secure the attendance of witnesses; (3) the cost of attendance for

witnesses; (4) other practical problems making trial "easy, expeditious and inexpensive"; (5)

administrative difficulties resulting from court congestion; (6) the local interest in deciding

localized issues; (7) the forum's familiarity with the governing law; and (8) avoidance of

---

[6]To the extent there would be potential witnesses and evidence in the possession or control of
SIEI, which would be unlikely, data sources and custodians would be located in Japan, and
therefore, these facts do not materially alter the transfer analysis.

problems associated with conflict of laws or applying foreign law. *Id.*[7] Courts evaluate these factors based on "the situation that existed at the time of filing … ." *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-cv-00097-ADA, 2022 WL 1593366, *1 (W.D. Tex. May 19, 2022).

Plaintiff's choice of venue is not an independent factor in this analysis, and courts must not give inordinate weight to plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313. If a movant shows good cause upon demonstrating that the transferee venue is "clearly more convenient," then the court should transfer the case. *Caselas, LLC v. Jetpay LLC*, No. 6:20-cv-01138-ADA, 2021 WL 6015534, at *2 (W.D. Tex. Sept. 3, 2021). The "clearly more convenient standard is not equal to a clear-and-convincing evidence standard, but it is nevertheless materially more than a mere preponderance of convenience." *Id*.

## IV.   ARGUMENT

### A.   This Case Could Have Been Brought In The Austin Division

Section 1404(a) asks a preliminary question regarding whether venue and jurisdiction would have been proper in the transferee forum. 28 U.S.C. § 1404(a). A patent infringement case "may be brought in the judicial district … where the defendant has committed acts of infringement and has a regular and established place of business." *Id*. § 1400. In patent cases, transfer motions under section 1404(a) are governed by the law of the regional circuit. *3D Surfaces*, 2022 WL 3695483, at *2. This case could – and should – have been brought in the Austin Division because as Plaintiff acknowledges, Bluepoint's headquarters and principal place of business is in Austin. *See* Compl. ¶¶ 6, 18, 20-23. Furthermore, SIE has an office location in Austin. Section 1404(a)'s threshold question is satisfied in this case.

---

[7] Internal citations and quotation marks are omitted throughout this brief.

**B.**      **The Austin Division Is Clearly More Convenient Than the Waco Division**

Courts in the Western District of Texas consistently transfer cases to other divisions where the first forum has few or no ties to the action and where another division is more convenient. *E.g.*, *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987, at *6 (W.D. Tex. June 24, 2020); *Freshub, Inc. v. Amazon.com Inc.*, No. W-19-cv-00388-ADA, 2019 WL 10856832, at *1-2 (W.D. Tex. Sept. 9, 2019) (granting transfer from Waco to Austin; one defendant was headquartered in Austin, another defendant had offices and relevant employees in Austin, no party was based in or maintained offices in the Waco Division, and no relevant documents existed in the Waco Division); *Mimedx Group, Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-cv-464-LY, 2014 WL 12479284, at *3 (W.D. Tex. Aug. 12, 2014).

Here, the private and public interest factors clearly favor transfer to Austin for convenience. Plaintiff's Complaint pleads numerous facts that implicate the Austin rather than Waco Division to justify venue in the Western District of Texas, including the location of available employment positions (compl. ¶¶ 20-21), Bluepoint's main office (*id.* ¶¶ 6, 18), and numerous employees and potential witnesses from both Bluepoint and SIE (*id.* ¶¶ 22-37). Plaintiff's pleadings matter here because Plaintiff carries the burden to establish proper venue under 28 U.S.C. § 1400(b). *In re ZTE (USA)*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). To satisfy section 1400(b), Plaintiff must show where Defendants have a regular and established place of business. Plaintiff pleads venue based on Bluepoint, whose regular and established place of business is in Austin, and SIE employees living and working in Austin. Compl. ¶¶ 17-18. This Court has held a plaintiff accountable for such pleadings. As the "master of his complaint," Plaintiff cannot "back away from" those factual allegations to establish venue. *10Tales, Inc. v. TikTok Inc.*, No. 6:20-cv-810-ADA, 2021 WL 2043978, at *3 (W.D. Tex. May 21, 2021).

No Defendant has any witnesses or evidence located in Waco. In contrast, Austin has

Bluepoint's only office (and thus its operations, employees and evidence), an SIE office, and at least, as discussed below (*infra* section IV.B.1(b)), three potential third party witnesses. Any remaining potential witnesses from SIE, SIEI, or third parties are located either in California, other states outside Texas, Japan, or Australia. Those third parties include Barbaro Technologies in Boston, Google in Mountain View, California, one prosecution firm in Tennessee, and various other technology companies and venture capital firms based in San Francisco, Los Angeles, and Australia. Ex. G; Ex. D, ¶¶ 2, 4-5, 9. Therefore, Defendants' motion to transfer to the Austin Division should be granted.

### 1.      The Private Interest Factors Favor Transfer

#### (a)      Accessing Sources of Proof is Easier in Austin than Waco

The key consideration in weighing this factor is the location of Defendants' evidence. "[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (applying 5th Circuit law). Electronic documents can be accessed anywhere in modern times, so this Court "analyze[s] this factor with a focus on the location of physical documents and other evidence; and the hardware storing the relevant electronic evidence." *3D Surfaces*, 2022 WL 3695483, at *7. And, "it is error not to also consider: the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *Id*.

Here, Defendant is not aware of any sources of proof located in Waco, nor has Plaintiff's Complaint identified any such evidence. Although many of Defendants' documents are available in electronic form, this Court has recognized that under the applicable Fifth Circuit precedent, the lack of a "single source of physical proof in this District … favors transfer." *10Tales*, 2021 WL 2043978, at *2; *see also Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-cv-669-ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) (noting that even when the relevant

evidence is stored electronically, "this factor is relevant regardless of the method of storage," and

when such evidence is stored in the transferee venue, that fact favors transfer); *Eight One Two,*

*LLC v. Purdue Pharma L.P.*, No. 3:13-cv-2981-K, 2014 WL 7740476, at *2 (N.D. Tex. May 16,

2014). There is not a single source of physical proof in Waco, and this strongly favors transfer to

the Austin Division.

Instead of pleading sources of proof in the Waco Division, the Complaint pleads

numerous facts highlighting the Austin Division as the location of most of the evidence in this

case. *See* Compl. ¶¶ 6, 18 (Bluepoint's principal place of business), 20-21 (available employment

positions), and 22-37 (Defendants' employees and witnesses residing in Austin).

Bluepoint's operations, personnel, and documents – including physical documents,

hardware storing its electronic documents, and custodians who create and maintain electronic

documents – are all located in its Austin office, with the exception of some remote workers who

reside outside of Texas. Compl. ¶¶ 6, 18, 22-23; Clarkson Decl. ¶ 7. Bluepoint's records that

may be relevant in this case are maintained in its Austin office. Clarkson Decl. ¶ 7. Furthermore,

Bluepoint stores electronic documents on servers and databases located in its Austin office. *Id*. ¶

7; *see Corrino Holdings LLC v. Expedia Inc., No. 6:20-cv-309-ADA, 2022 WL 1094621,* at *2*,

(W.D. Tex. Apr. 12, 2022)*;*(transfer to Austin in part because "[m]ost importantly, computer

servers and documents relevant to the Accused Functionalities are stores [sic] in [defendant's]

Austin offices," and no documents in Waco). Any review of Bluepoint's highly confidential

source code would need to be conducted at Bluepoint's Austin office. Clarkson Decl. ¶ 7.

Finally, Bluepoint employee custodians who create and maintain such electronic

documents are located in Austin. *Id*. ¶ 7. Bluepoint's office is 11 miles from the Austin

courthouse, but roughly 100 miles from the Waco courthouse. Exs. K-L. Thus, Bluepoint's

evidence is more easily accessed from the Austin courthouse than from Waco. "[W]here a party has a campus in a transferee district and no major presence in the district where the complaint was brought, the factor weighs in favor of transfer." *MicroPairing*, 2021 WL 4526704, at *2 (granting motion to transfer where movant had an Austin campus, but none in Waco, resulting in easier access to electronic documents from Austin than Waco).

To the extent there is evidence in SIE's possession or control that is likely to serve as sources of proof and that relates to Plaintiff's Complaint, hard copy and electronic documents are generally accessible in the ordinary course of business at SIE's Austin or California offices. Waugh Decl. ¶ 8. Plaintiff recognizes SIE's presence in Austin by pleading there are at least 18 open SIE employment positions based in Austin, and alleging that eleven named Austin-based SIE employees are key witnesses. Compl. ¶¶ 21, 25-38; *Id*. ¶ 9. Likewise, at least three third party witnesses are located in the Austin Division – Fabio Lissi and Michael Mengden, former employees that Plaintiff alleged are key witnesses (compl. ¶¶ 29, 34; Waugh Decl. ¶ 9), and an office for Dunlap Codding, the firm of Marc A. Brockhaus, who prosecuted the '941 and '165 patents. Exs. F, V-W.

The remaining relevant evidence is located outside of Texas, and Plaintiff cannot present any sufficient evidence to support a contention that access to this evidence is not significantly less convenient from Waco than from Austin. *See infra* section IV.B.1(b) (explaining why Austin is more accessible than Waco for out-of-state witnesses). Plaintiff is headquartered in Casper, Wyoming. Compl. ¶ 1; Ex. B. The Asserted Patents' inventor – Frances Barbaro Altieri – resides in Belmont, Massachusetts. Compl., Exs. A-D, all at 2; Ex. E; Ex. D, at 4. Her company Barbaro Technologies is based in Boston. Ex. D, ¶ 2. Google and various venture capital companies to which Ms. Barbaro Altieri pitched the related '377 patent and presumably the entire portfolio

including the Asserted Patents are located in San Francisco, Los Angeles, and Australia. Ex. D,

¶¶ 4-5, 9. Finally, the prosecutor for the '028 and '724 patents – Jean C. Edwards of Edwards

Neils LLC – is located in Gallatin, Tennessee. Compl., Exs. A-B, all at 2; Ex. G. Because any

relevant evidence is either located in the Austin Division or outside Texas, and none in Waco,

this factor weighs in favor of transfer.

**(b)     It Would be More Efficient and Cheaper for Willing Witnesses
to Attend Trial in the Austin Division**

"The convenience of witnesses is the single most important factor in the transfer

analysis." *Sonrai Memory Ltd v. Oracle Corp.*, No. 6:21-CV-00116-ADA, 2022 WL 315023, at

*3 (W.D. Tex. Feb. 2, 2022). This analysis "should focus on the cost and inconvenience imposed

on the witnesses by requiring them to travel to a distant forum and to be away from their homes

and work for an extended period of time." *Corrino*, 2022 WL 1094621, at *3.

No parties – SIEI, SIE, Bluepoint, or Plaintiff – have any presence in Waco, and there is

no evidence that any third party resides in Waco. *See supra* section II.A. Plaintiff's Complaint

recognizes this by similarly failing to identify any such evidence.

On the other hand, Plaintiff's Complaint identifies numerous potential witnesses residing

in Austin. Waugh Decl. ¶ 9; Clarkson Decl. ¶ 6.   Plaintiff's Complaint emphasizes that "**68**

**Bluepoint employees** [are] listed as located in Austin via LinkedIn" and expressly alleges that at

least two potential witnesses reside in Austin. Compl. ¶¶ 22-23 (emphasis in original). Two

Bluepoint employees, Steven Schaefer and Chris Torres, are alleged by name and at least one

lives in Austin. *Id*. ¶ 22; Clarkson Decl. ¶ 6. Indeed, the Bluepoint employees who are most

knowledgeable about the Accused Products live and work in Austin. Clarkson Decl. ¶ 5.

Furthermore, while SIE's knowledgeable employees are located in Northern California, Plaintiff

alleged that eleven SIE employees are key witnesses that live and work in Austin. Compl. ¶¶ 26-

11

36. Eight of those witnesses are still employed by SIE and reside in Austin. Waugh Decl. ¶ 9.

Importantly, potential third party witnesses also appear to reside in Austin. In particular, Fabio Lissi and Michael Mengden were key SIE witnesses identified by Plaintiff. Compl. ¶¶ 29, 34. They live in Austin, but no longer are employed by SIE, and thus would be Austin-based third party witnesses. Waugh Decl. ¶ 9. And, Marc A. Brockhaus, the prosecutor for the '941 and '165 patents works at Dunlap Codding, which has an Austin office. Ex. F, V-W.

If this case remained in Waco, the numerous Austin-based witnesses from Bluepoint, alleged SIE witnesses, and third parties would need to travel the roughly 100 miles to Waco, fighting traffic, losing work and family time, and facing increased expense. A witness driving from Austin to the Waco courthouse for a 9 a.m. trial day, and back to Austin at the end of the day, would spend roughly three to four hours in the car. Exs. M-N. And while it may save driving time, booking a hotel in Waco to avoid the daily drive would result in increased expense. The number of Austin-based witnesses and lack of Waco-based witnesses alone tips the scale heavily in favor of transfer. *See, e.g.*, *Sonrai*, 2022 WL 315023, at *3 (no need to address whether out-of-state witnesses further favored transfer where factor favored transfer based on "numerous" defendant witnesses and a third-party witness in Austin, and no Waco-based witnesses); *Corrino*, 2022 WL 1094621, at *4 (transfer from Waco to Austin granted in part because defendant showed employees knowledgeable about the design, development, and marking of the Accused Instrumentalities resided and worked in the Austin Division).

If this case is not transferred, witnesses based outside of Texas will have to travel even further. Those witnesses might include SIE's California-based employees knowledgeable about the Accused Products, Google based in Mountain View, California, the named inventor who resides in Massachusetts, venture capital companies in San Francisco, Los Angeles, and

Australia, one prosecutor located in Tennessee, and Bluepoint remote workers identified in the Complaint (*see* compl. ¶23). While unlikely to have any relevant information separately from SIE, any potential SIEI employees forced to travel from Japan to Waco for trial will have an already-difficult international trip further complicated. It "will be cheaper and faster for [these] potential witnesses" to travel to Austin than Waco. *Corrino*, 2022 WL 1094621, at *3. Witnesses from outside of Texas could fly directly to Austin, but would have to connect to Waco's small airport or drive there from Austin, increasing not only travel time but cost. Exs. H, U; *Hammond*, 2020 WL 6136784, at, 2021 WL 4485016, at *6 (transfer from Waco to Austin granted because no facts to support "that travel to Waco from the NDCA is not significantly less convenient compared to travel to Austin"). A survey of available flights during a random upcoming week (departing November 5, 2022 and returning November 12, 2022) showed that flights from at least San Francisco and San Jose cost on average $300 more to fly to Waco than Austin. Ex. U. No flights appear to be offered between Oakland and Waco, even with connecting flights. Ex. H.

Air travel has become increasingly complicated, and adding more travel legs per trip inevitably invites more trouble. Flight cancellations and delays have drastically increased, and consumer complaints about airlines have risen 321.5 percent since pre-pandemic levels. *See e.g.*, Exs. I-J. Costs have increased dramatically from what it cost pre-pandemic. Ex. P, at 3-4. Austin is also more convenient for witnesses that might travel from outside Texas because those traveling SIE and SIEI employees could work from SIE's Austin offices, which would be significantly more convenient than having to travel to and from Waco each day. Waugh Decl. ¶ 10; *see Hammond*, 2020 WL 6136784, at *4. Travel times to Waco are thus greater for both Austin-based witnesses and domestic and international witnesses outside of Texas, so this factor weighs strongly in favor of transfer. *See Sonrai*, 2022 WL 315023, at *3.

**(c)** **The Availability of Compulsory Process to Secure Attendance of Witnesses is the Same for the Waco and Austin Divisions**

Under this factor, courts must consider the availability of compulsory process to secure

the attendance of witnesses who are unwilling, or otherwise may require a court order.

*Volkswagen II*, 545 F.3d at 316. Both the Waco and Austin Divisions would have the same

subpoena power because they are in the same district. Therefore, this factor is neutral.

**(d)** **The Absence of Other Practical Problems Favors Transfer**

Courts must also consider "all other practical problems that make trial of a case easy,

expeditious and inexpensive." *Id.* at 314. This case has not yet reached the Markman hearing –

indeed, the pleadings are not yet settled – so judicial economy would not be disfavored by

transferring the case. Furthermore, there appears to be no other cases pending in this Court or in

the Austin Division involving the Asserted Patents. Ex. X. Finally, "this Court has previously

held that the last private interest factor favors transfer when most witnesses are present in the

transferee forum." *Correct Transmission*, 2021 WL 1967985, at *5. Because witnesses live and

work in the Austin area and not Waco; compl. ¶¶ 6, 18, 20-23, this factor favors transfer.

**2.** **The Public Interest Factors Favor Transfer**

**(a)** **The Court Congestion in the Waco Division Favors Transfer to the Austin Division**

As this Court has recognized, "court congestion is considered the most speculative

factor." *Micropairing Techs. LLC v. Toyota Mfg. Tex., Inc.*, No. 6-20-CV-01001-ADA, 2021

WL 4526704, at *5. When "relevant factors weigh in favor of transfer and others are neutral,

then the speed of the transferee district court should not alone outweigh all those other factors."

*10Tales, Inc.*, 2021 WL 2043978, at *5. Regardless of what time to trial statistics would show,

the difference between trial times in the two forums should not affect the transfer analysis,

especially where, as here, it is unlikely that Plaintiff practices the asserted patents. *See In re*

*WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (finding no reason to "assign significant weight in the transfer analysis" to this factor where plaintiff does not practice the patent and "is not in need of a quick resolution of this case"); *see also Corrino Holdings*, 2022 WL 1094621, at *3 (finding this factor neutral and observing "the Federal Circuit has indicated this is the most speculative factor"). Therefore, this factor is neutral.

### (b)      Austin's Local Interest Strongly Favors Transfer

While courts must not give heavy weight to a party's general presence in the forum, they should afford significant weight to the location where the accused products were "designed, developed, and tested." *3D Surfaces*, 2022 WL 3695483, at *9. No Accused Products were designed, developed, and tested in Waco, but at least some were in Austin. Waugh Decl. ¶ 6; Clarkson Decl. ¶ 8. In particular, Bluepoint's Demon's Souls underwent all three stages at its Austin offices. *Id*. ¶ 8. Additionally, many of Defendants' employees reside in the Austin Division, and none in Waco. Waugh Decl. ¶ 7; Clarkson Decl. ¶ 5; *see 3D Surfaces*, 2022 WL 3695483, at *9. Austin's local interest in the case – and Waco's lack thereof – favors transfer.

### (c)      The Remaining Public Factors are Neutral

The final two public factors – familiarity of the forum with the governing law at issue and conflict of laws – are neutral. *See, e.g.*, *3D Surfaces*, 2022 WL 3695483, at *10.  Both the Waco and Austin Divisions are familiar with and equipped to apply federal patent law. And, neither Division would encounter a conflict of law, or require that foreign law be applied in this case.

## V.      CONCLUSION

Accordingly, for the foregoing reasons the Court should grant Defendants' request to transfer this case to the Austin Division.

DATED: October 21, 2022

Respectfully Submitted,
*/s/Karineh Khachatourian*

Karineh Khachatourian (CA SBN 202634) (*Pro Hac Vice)*
karinehk@kxtlaw.com
Rachael C. Chan (CA SBN 265002) (*Pro Hac Vice*)
rachael@kxtlaw.com
Oren J. Torten (CA SBN 332720) (*Pro Hac Vice)*
oren@kxtlaw.com
Vinh T. Le (CA SBN 338580) (*Pro Hac Vice)*
vinh@kxtlaw.com
KXT LAW, LLP
1775 Woodside Road, Suite 204
Redwood City, California 94061
Telephone:  650-239-0420
Fax:  650-249-5013

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

Attorneys for Defendants,
SONY INTERACTIVE ENTERTAINMENT INC., SONY INTERACTIVE ENTERTAINMENT LLC, and BLUEPOINT GAMES, INC.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for the parties have conferred and Plaintiff is opposed to this motion.

*/s/ Karineh Khachatourian*
Karineh Khachatourian

16

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record on October 21, 2022.

*/s/ Karineh Khachatourian*
Karineh Khachatourian
